AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Middle District of Pennsylvania

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>**Cellular Device Assigned Call Number (484) 513-4422,**<br>**that is Stored at Premises Controlled by**<br>**Verizon Wireless** | )<br>)<br>)<br>)<br>)<br>)    Case No. 1:23-mc-00146 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____Middle_____ District of _____Pennsylvania_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 924(c) | Carrying a Firearm in Furtherance of a Crime of Violence |
| 18 U.S.C. § 1951 | Hobbs Act Robbery |
| 18 U.S.C. § 371 | Conspiracy |

The application is based on these facts:

I, Michael McKinney, a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") being duly sworn, deposes and states (cont'd)

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
/s/ Michael McKinney
*Applicant's  signature*

Michael T. McKinney, Special Agent, ATF
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____Telephonically Authorized_____ *(specify reliable electronic means).*

Date: _____02/14/2023_____

/s/ Martin C. Carlson by MTM
*Judge's signature*

City and state:  Harrisburg, Pennsylvania

Susan E. Schwab, United States Magistrate Judge
*Printed name and title*

## INTRODUCTION AND AGENT BACKGROUND

1.      (cont'd) I make this affidavit in support of an application for a search warrant for information associated with a certain cellular telephone assigned call number **(484)513-4422**, ("SUBJECT PHONE") and that is stored at premises controlled by **VERIZON WIRELESS**, ("the PROVIDER") a wireless telephone service provider headquartered at **180 Washington Valley Rd., Bedminster, NJ. 07921**. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require **VERIZON WIRELESS** to disclose to the government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2.      I am a Special Agent ("SA") with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), assigned to the Allentown Field Office of the Philadelphia Field Division.  I have been employed as a SA with ATF since May 2015.  Prior to joining ATF, your affiant was a

Federal Air Marshal for six years, assigned to both the Washington and Baltimore Field Divisions.  I have participated in the investigations of narcotics and firearms trafficking, as well as Hobbs Act robberies, kidnappings, arson and explosive investigations, and thefts of Federal firearms licensees. Among other activities, I have conducted or participated in surveillance, the execution of search and arrest warrants, as well as acquired and examined technical data derived from cellular providers.  Through my training, education, and experience, I have become aware that individuals typically utilize cellular telephones to facilitate the commission of crimes. In my experience, they will also utilize various features available on/or through their cellular telephones which enable them to, among other things, view maps, locate addresses, obtain directions, and follow routes of travel to their destinations.

3.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 924(c) (Carrying a Firearm in Furtherance of a Crime of Violence); 18 U.S.C. § 1951 (Hobbs Act Robbery); and 18 U.S.C. § 371 (Conspiracy) have been committed, are being committed, and will be committed by unknown persons. There is also probable cause to search the information described in Attachment A for evidence or fruits of these crimes as further described in Attachment B.

## PROBABLE CAUSE

5.      The United States, specifically, the Bureau of Alcohol, Tobacco, Firearms, & Explosives (ATF), and Pennsylvania State Police (PSP), are investigating the Infamous Ryders outlaw motorcycle club (hereinafter referred to as "IRMC").  The investigation concerns possible violations of **18 U.S.C. § 924(c); § 1951; and § 371**.

6.      On Monday, September 14, 2020, a home invasion robbery took place in Shillington, Berks County, PA, in which the victim, whose identity is known to law enforcement, was severely injured after being held at gunpoint.

7.     On or about January 2021, ATF SAs Mike McKinney and
Jamie Markovchick, interviewed the victim, M.T., regarding the
circumstances surrounding his/her robbery. M.T. stated that while
taking a nap on his/her couch, (s)he was awakened by two (2) masked
males holding an AR style rifle and a pistol, respectively. M.T. described
the individual holding the AR style rifle as a black male, and the
individual holding the pistol as a Hispanic male who was wearing a
knife around his neck. M.T. stated that (s)he knew the rifle was real
because (s)he could feel the cold metal of the muzzle against his/her
head. M.T. stated that (s)he was struck several times by the intruders'
fists and firearms, causing him/her to bleed heavily from the head. M.T.
was robbed of several thousand dollars in cash, as well as marijuana,
and THC derivatives. M.T. stated that the home invaders used a
cellular telephone to video record the robbery. M.T. stated that (s)he
illicitly sells marijuana. After being held at gunpoint for several
minutes, M.T. was able to escape by jumping from a third story window
severely injuring him/herself. While lying on the ground outside of the
residence, M.T. saw the two (2) males leave his/her house carrying

items of value and enter a blue Jeep SUV that was waiting for them with a getaway driver.

8.     The investigation determined that Cornelius GREEN (hereinafter "GREEN") was a potential suspect in the home invasion. GREEN was indicted by a Federal grand jury in the Middle District of Pennsylvania (MDPA) on December 9, 2020, for kidnapping, as part of a parallel investigation by ATF. GREEN was arrested by ATF on January 7, 2021, in Pottsville, PA. Search incident to arrest, GREEN's cellular telephone was seized by law enforcement.

9.     On May 25, 2021, Agents reviewed evidence discovered through a forensic download of Cornelius GREEN's cellular telephone. During a review of GREEN's phone download, Agents discovered a first-person video (video #1021) dated 9/14/2020, at 3:32pm, the day of the robbery. The video shows M.T. being assaulted at gun point by two individuals, who are also questioning him/her as to where his/her other valuables are, before (s)he escapes, and the intruders flee the home. Agents isolated still images of the individual holding a pistol and a container with M.T.'s belongings. The tattoos on the arms are consistent with the tattoos for Joushten "BamBam" RODRIGUEZ (hereinafter

"JRODRIGUEZ"), photographed by the Pennsylvania Department of
Corrections, and displayed on the Pennsylvania Justice Network-
WebCPIN. Also visible on JRODRIGUEZ is a neck style knife
suspended by a lanyard that is consistent with Facebook pictures of
JRODRIGUEZ wearing the same knife around his neck. JRODRIGUEZ
is a member of the Infamous Ryders, and a known associate of GREEN.

10.    Further analysis of GREEN's phone revealed a first-person
video (video #886) dated 9/14/2020, at 2:57pm, the day of the robbery.
The video depicted a recording of the outside of M.T.'s residence in the
time leading up to the robbery, which was narrated by three (3)
individuals. On March 1, 2022, law enforcement interviewed an
associate (hereinafter "Witness 1" or "W1") of GREEN, whose identity is
known to your affiant, but is being withheld for their safety. W1 stated
that the voices of the individuals in Video #886 are that of Cornelius
GREEN, Joushten Rodriguez, and Solomon RODRIGUEZ (hereinafter
"SRODRIGUEZ"). The blue Jeep SUV previously described in
paragraph 6 of this affidavit, is known by law enforcement to be
operated by SRODRIGUEZ through interviews with co-conspirators as
well as law enforcement surveillance.

6

11.     A search of GREEN's cellular text messages revealed a text message conversation between GREEN and his girlfriend dated 9/14/2020, the date of the home invasion robbery. In the conversation GREEN's girlfriend asked GREEN if he was coming to her house. GREEN responded that he was out on a "lick". A "lick" is known to law enforcement as slang for committing a robbery. GREEN's girlfriend responded with "Okk". GREEN sent a text message back several hours later stating, "Da lick went good we got moonrock and cash and weed". GREEN's girlfriend responded with "yay". Moonrock is a type of THC derivative.

12.     On October 28, 2022, the Honorable Susan E. Schwab, United States Magistrate Judge for the Middle District of Pennsylvania, authorized a search warrant for the historical cell site location data of Solomon RODRIGUEZ. An ATF analysis of that data revealed that on September 14, 2020, the day of the home invasion robbery of M.T., Solomon RODRIGUEZ traveled from Pottsville, PA to the area of M.T.'s residence, remained for the duration of the crime, then traveled back to Pottsville, PA.

13.     On January 31, 2023, PSP Trooper Norby Brennan conducted an interview with Rachel LYSAKOWSKI, former girlfriend of M.T. During the interview LYSAKOWSKI stated that she had been in an argument with M.T. and was venting about the issue with Isaias SOLER, who is also a member of the IR. LYSAKOWSKI stated that earlier on the day of the robbery, SOLER came to her residence and retrieved a key to M.T.'s residence. LYSAKOWSKI stated that later that evening SOLER returned to her residence, returned the key, and showed her a video of the robbery that had occurred (Video #1021). LYSAKOWSKI provided a cellular telephone number for SOLER of **484-513-4422** (SUBJECT PHONE). On February 1, 2023, law enforcement databases revealed that Verizon Wireless was the carrier for the SUBJECT PHONE during the home invasion robbery on September 14, 2020.

14.     In my training and experience, I have learned that AT&T, Sprint, MetroPCS, Verizon, Cricket and T-Mobile ("the Service Providers") are companies that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate

information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

15.   Many cellular service providers maintain antenna towers ("cell towers") that serve specific geographic areas.  Each cell tower receives signals from wireless devices, such as cellular phones, in its general vicinity.  These cell towers allow the wireless devices to transmit or receive communications, such as phone calls, text messages,

and other data.  The tower closest to a wireless device does not necessarily serve every communication made to or from that device.

16.    In addition to a unique telephone number, each cell phone is identified by one or more unique identifiers.  Depending on the cellular network and the device, the unique identifiers for a cell phone could include an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI").

17.    Cellular service providers routinely maintain historical cell-tower log information, including records identifying the wireless telephone calls and communications that used a particular tower.  For each communication, these records may include the telephone call number and unique identifiers for the wireless device in the vicinity of the tower that made or received the communication ("the locally served wireless device"); the source and destination telephone numbers associated with the communication (including the number of the

telephone that called or was called by the locally served wireless device); the date, time, and duration of the communication; the "sectors" (i.e., the faces of the towers) that received a radio signal from the locally served device; and the type of communication transmitted through the tower (such as phone call or text message).

18.    Based on my training and experience, I know that Service Providers can collect cell-site data about SUBJECT PHONE. I also know that wireless providers such as the Service Providers typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

19.    Based on my training and experience, I know that wireless providers such as the Service Providers typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as the Service Providers typically collect and retain information about

11

their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the SUBJECT PHONES user or users and may assist in the identification of co-conspirators and/or victims.

## AUTHORIZATION REQUEST

20.    Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

21.    I further request that the Court direct Service Providers to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on Service Providers, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

## ATTACHMENT A

### Property to Be Searched

This warrant applies to records and information associated with the cellular telephone assigned call numbers **484-513-4422**, that are stored at premises controlled by **VERIZON WIRELESS** ("the Provider"), headquartered at **180 Washington Valley Rd., Bedminster, NJ. 07921.**

# ATTACHMENT B

## Particular Things to be Seized

## I.     Information to be Disclosed by the Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted, but is still available to the Provider, or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

    a. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, for the time period **09/14/2020, between the hours of 01:00a.m. and 11:59p.m.,** including:

        i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination

telephone numbers (call detail records)), e-mail

addresses, and IP addresses); and

ii.  information regarding the cell towers and sectors,

including physical location, through which the

communications were sent and received.

## II.    Information to be Seized by the Government

All information described above in Section I that constitutes

evidence, fruits, contraband, and instrumentalities of violations of **18

U.S.C. § 924(c); § 1951; and § 371** involving **Isaias SOLER, or other

users** of the SUBJECT PHONE during the period **09/14/2020, between

the hours of 01:00a.m. and 11:59p.m.**.

2